QUINN FREIGHT LINES, INC. *v.* MARGARET
R. WOODS, ETC. ET AL.

[No. 116, September Term, 1971.]

*Decided November 11, 1971.*

The cause was argued before MORTON, THOMPSON and MOYLAN, JJ.

*John L. Moring, Jr.,* and *G. Raymond Valle,* with whom were *Robert J. Callanan* and *Callanan, Goff, Moring & Callanan* on the brief, for appellant.

*Richard C. Whiteford,* with whom were *Ernest C. Trimble* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellee Margaret R. Woods. *Robert R. Bright,* with whom was *Harold Buchman* on the brief, for appellees Mildred Robertson and Ronald Pellerin.

THOMPSON, J., delivered the opinion of the Court.

Quinn Freight Lines, Inc., the defendant/appellant, appeals from several judgments entered against it as a result of a motor vehicle accident. Judgments were entered in favor of the personal representative, the widow and dependent children of Arthur L. Woods, who died in the collision precipitating this dispute. Judgments were also entered on behalf of Mildred Robertson and

Ronald Pellerin who were passengers in the Woods vehicle. The case was tried in the Circuit Court for Baltimore County, Judge H. Kemp MacDaniel presiding without a jury.

The questions on appeal are: (1) was the trial court clearly erroneous in finding negligence on the part of George Trawitz, the driver of the truck owned by Quinn Freight Lines, Inc., the appellant; (2) was the court clearly erroneous in finding Arthur L. Woods free from contributory negligence; and (3) was the court clearly erroneous in finding Mildred Robertson and Ronald Pellerin free from contributory negligence or assumption of risk.

The trial judge's findings, all of which were supported by the evidence, are summarized: About 2:00 P.M. on July 7, 1968, Woods left Front Royal, Virginia, to proceed to Edgewood in Harford County, Maryland. Between 5:30 P.M. and 6:30 P.M., Woods entered the American Legion Hall in Edgewood and began drinking with plaintiffs Robertson and Pellerin. At approximately 10:00 P.M., the three left the American Legion Hall together. Woods was the driver of the automobile, plaintiff Robertson was sitting in the front seat in the center and plaintiff Pellerin was sitting in the front seat on the right. Woods, sometime during that day had consumed enough alcoholic beverage to have 0.19% of alcohol content in his blood at the time of the accident. Robertson and Pellerin had been drinking with Woods before they left the American Legion Hall. Woods did not give any appearance of intoxication; he conducted himself in an apparently normal manner from the time he left the American Legion Hall until the time of the accident.

At the time of the accident Woods was driving in a westerly direction towards Baltimore on Route 40, a dual highway, in the fast lane of traffic at speeds between forty-five (45) and fifty (50) miles per hour. To the right of Woods were two Good Humor trucks. The one closest to the Woods vehicle was traveling in the slow lane of traffic at forty-five (45) miles per hour and was

being operated by one Mr. Duke. The driver of the Quinn truck pulled onto Route 40 with the intention of crossing both the slow and fast traffic lanes and entering the innermost left turn lane. The truck had exited the Quinn Company lot and had traveled approximately one hundred forty-five (145) feet when the accident happened. Impact occurred in the fast lane of traffic when the Woods automobile struck the rear of the Quinn truck; the larger portion of the Quinn truck was then diagonally into the left turn lane. The Quinn truck had both its headlights and its rearmost lights illuminated at the time of the accident, but had no side lights nor turn signal. The truck had traveled "some distance" in the slow traffic lane before entering the fast lane, therefore, the distance between entering the fast lane of traffic and the point of impact had to be less than the one hundred forty-five (145) feet mentioned above.

At the point where the Quinn truck entered Route 40, the line-of-sight distance for traffic coming westerly on Route 40 was approximately 1665 feet. The Good Humor truck driven by Mr. Duke was four or five car lengths from the Quinn truck which, at the time Duke first observed it, was mostly in the fast lane and partially in the slow lane at an angle, and was proceeding at a slow speed to clear the slow lane of traffic. The Woods vehicle was in the fast lane slightly to the rear of the Good Humor truck.

The width of the shoulder from the Quinn exit to Route 40 was seven feet three inches (7'3"). The width of the slow lane of traffic was twelve feet four inches (12'4"). The width of the fast lane of traffic was twelve feet three inches (12'3") and the grass median strip next to the fast lane of traffic was approximately twenty-seven (27) feet in width, and on the other side of this grass median strip were eastbound lanes of traffic.

Upon these facts it is clear that the truck had not entered completely, the left turn lane, nor was it in the flow of traffic at the time of impact. The evidence indicates that Mr. Woods was operating his vehicle in the

fast or passing lane, that he was about to pass the slower moving ice cream truck, and that he had no reason to anticipate that a large, slow moving tractor trailer rig would enter from the right and expropriate his right of way.

Although Woods had been drinking heavily and had 0.19% of alcohol content in his blood at the time of the accident, there is no evidence to indicate that this in any way was a contributing factor to the accident. The trial judge, therefore, found that the sole cause of the accident was the primary negligence on the part of the defendant Quinn, and that there is no evidence to indicate that anything done by Woods was a contributing factor to the happening of the accident. Accordingly, the lower court found the defendant Quinn to be guilty of primary negligence and the plaintiff Woods to be free of contributory negligence. The trial judge further found that even if Woods were negligent, there is no evidence to show that either of the plaintiffs, Robertson and Pellerin, assumed any risk or were themselves negligent, therefore, under any theory, these plaintiffs would be entitled to recover.

## Motions

The appellant, Quinn Freight Lines, Inc., argues its motion for a directed verdict should have been granted. We note that such a motion is proper only in a jury trial, Md. Rule 552. The proper motion in a non-jury case is a motion to dismiss, Md. Rule 535, and is in order only at the conclusion of the opponent's case and not at the conclusion of the entire case. Under Md. Rule 1086 we are permitted to review the evidence as well as the law in a non-jury case, but we are not permitted to set aside the judgment of the lower court on the evidence unless that determination is "clearly erroneous." Under the rationale of *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731, we see no real difference in our function in reviewing the evidence under Md. Rule 1086 in a non-jury trial and reviewing the propriety of the trial court's rulings un-

der Md. Rules 535 or 552. It may be well to note that the burden of proof in a criminal case is beyond a reasonable doubt and the burden in a civil case is by a preponderance of the evidence; otherwise the principles of *Williams, supra,* apply fully to civil cases. We will discuss the case in terms of Maryland Rule 1086.

### Negligence of Appellant's Truck Driver

Relying on *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481, that the boulevard rule can be violated even though the accident occurred outside of the intersection, the trial court found that since the appellant's truck did not safely reach his own proper lane, the driver was negligent. We decided the question in *Kowalewski v. Carter,* 11 Md. App. 182, 273 A. 2d 212 and indicated that when the accident occurs outside of the intersection, the unfavored driver's negligence would usually be a question for the trier of the facts to decide. The testimony of Duke, the driver of the leading Good Humor truck, that he was a car-and-a-half length ahead and to the right of the Woods vehicle, and that the Quinn truck barely cleared his lane before his passage, would tend to support the trial judge's application of the boulevard law because, if that be true, the appellant's truck never safely reached his proper lane of traffic, nor attained sufficient speed. We have no difficulty in holding the finding of primary negligence was not clearly erroneous because, even if the application of the boulevard rule were improper, clearly appellant's truck was changing lanes when unsafe to do so, Md. Code, Art. 66½, § 234 (now covered by § 11-309) and turning without proper signal, Art. 66½ § 217 (now covered by § 11-604) and the truck driver's negligence could be established under either theory.

### Woods Negligence

Appellant argues most strenuously that the testimony of its expert witness, Dr. Henry C. Freimuth, a Toxicologist in the Office of the Chief Medical Examiner of Maryland, was sufficient to show contributory negligence

*per se* on the part of Woods. After testifying that the postmortem examination showed Woods' blood to have contained 0.19% alcohol at the time of the accident, he testified as follows:

> Dr. Freimuth: "At .19 percent ethyl alcohol concentration, Mr. Woods would have been under the influence of alcohol, and by that I mean his judgment would have been seriously affected, his reaction times would have been slowed, and therefore he would have been an unsafe operator of a motor vehicle."
>
> * * *
>
> Question: "Doctor, from your experience, having this amount of ethyl alcohol in the bloodstream, would every individual show obvious physical effects of this alcohol?
>
> Doctor: "Not necessarily. If a person was accustomed to consuming alcohol fairly regularly — I don't mean a chronic alcoholic but a person who is accustomed to consuming fair amounts of alcohol—he may be able to seem reasonably normal to most people in his behavior."

The Maryland cases have uniformly held that intoxication is evidence of negligence, but no case, as appellant concedes, has gone as far as saying that mere evidence of intoxication is, in itself, sufficient to show negligence. *Short v. Wells,* 249 Md. 224, 240 A. 2d 491, *Alston v. Forsythe,* 226 Md. 121, 172 A. 2d 474, held to the contrary at least, where the evidence failed to show that the intoxication was the proximate cause of the accident. In the instant case, all of the witnesses who had observed Woods within a short time before the accident testified he appeared normal and drove normally. Appellant's expert witness testified it was possible that a person with .19% of alcohol in his blood could act normally. Obviously the question as to the proximate cause of the accident could not be resolved as a matter of law in favor of the

appellant, and we cannot say the trial judge was clearly erroneous in resolving it against him.

The appellant argues that Woods' intoxication prevented him from avoiding the accident because he had a clear and level road for a considerable distance from the point of impact. This argument overlooks much. The trial judge found the truck traveled less than 145 feet on the highway. More importantly the argument overlooks the fact that even if Woods saw the defendant's truck, the boulevard rule would entitle him to assume that the truck would not violate his right of way. The argument also overlooks the fact that his vision was partially obscured by the height of the Good Humor truck.

The evidence is clear that appellant's truck pulled into the slow lane of traffic in front of the Good Humor truck, which almost struck it, and continued into the fast lane at a time when Woods, at a reasonable speed, was passing the Good Humor truck. The trial judge found the negligence of the appellant's driver to be the sole proximate cause of the accident. It seems almost inconceivable he could have reached any other conclusion; in any event he was not clearly erroneous in so finding.

### Contributory Negligence or Assumption of Risk by Woods' Passengers

The appellant argues that Woods' passengers assumed the risk or were negligent in riding with him knowing that he had been drinking. Although riding with an intoxicated driver can be evidence of contributory negligence or assumption of risk, the rule is of no importance if the drinking was not a proximate cause of the accident. Appellant's reliance on *Baltimore County v. State,* 232 Md. 350, 193 A. 2d 30, is misplaced because the trial judge in the instant case did not find, and we are in accord, that the drinking was a proximate cause of the accident.

The finding that Woods' passengers were not negligent can be supported on another ground. In view of the testimony that Woods appeared and drove normally, a fact

question was presented on the issue of the passengers' contributory negligence. See *Short v. Wells, supra,* 249 Md. at page 497, 240 A. 2d at page 228:

> "Aside from the positive evidence indicating intoxication, there was other evidence to the effect that the driver did not appear to be intoxicated, which, at least, presented a jury question on the issue of contributory negligence or assumption of risk."

We hold the trial judge was not clearly erroneous when he held Mildred Robertson and Ronald Pellerin free from contributory negligence or assumption of risk.

*Judgments affirmed.*
*Appellant to pay the costs.*