729 A.2d 79 (1999)
In re J.J.F., J.R.F.
Appeal of J. D. F.
Superior Court of Pennsylvania.
Submitted February 8, 1999.
Filed April 14, 1999.
*80 Mitchell P. Shahen, Aliquippa, for appellant.
Deborah K. DeCostro, Beaver, for appellee.
Maria Georgakis, Monaca, for K.S.K., participating party.
Before HUDOCK, SCHILLER, JJ., and CIRILLO, President Judge Emeritus.
CIRILLO, President Judge Emeritus:
¶ 1 The Court of Common Pleas of Beaver County, Orphans' Court Division, terminated the parental rights of J.D.F. ("father") to his two minor sons, J.J.F. and J.R.F. ("the boys"), by a final order dated May 8, 1998. Father has appealed. We remand for further proceedings.
¶ 2 There is no need for us to discuss the facts at this stage.
¶ 3 Father presents three questions for our review:
1. WHETHER THE DECREE OF THE ORPHANS' COURT IS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE CONSISTING OF TESTIMONY THAT IS SO CLEAR, DIRECT, WEIGHTY AND CONVINCING SO AS TO ENABLE THE TRIER [OF] FACT TO COME TO A CLEAR CONVICTION, WITHOUT HESITANCE, OF THE TRUTH OF THE PRECISE FACTS AT ISSUE WHEN THE TESTIMONY ESTABLISHED THAT THE NATURAL FATHER, JAMES FORSE, EXHIBITED REASONABLE FIRMNESS IN ATTEMPTING TO HAVE CONTACT WITH HIS MINOR CHILDREN EVEN THOUGH THE NATURAL MOTHER PLACED OBSTACLES IN HIS PATH THAT WERE SIGNIFICANT AND ONGOING?
2. WHETHER THE DETERMINATION OF THE ORPHANS' COURT IS SUPPORTED BY COMPETENT EVIDENCE WHICH ADDRESSES THE REQUIRED INQUIRIES OF WHETHER JAMES FORSE HAS OFFERED A REASONABLE EXPLANATION FOR HIS CONDUCT WITH REGARD TO THE CONTACT THAT HE HAD WITH HIS CHILDREN, THE POST-ABANDONMENT CONTACT BETWEEN JAMES FORSE AND HIS CHILDREN, AND A PROPER CONSIDERATION OF THE [E]FFECT OF THE TERMINATION OF PARENTAL RIGHTS ON THE CHILDREN ALL AS SET FORTH [IN] SECTION 2511[ (B) ]?
3. WHETHER THE LOWER COURT SHOULD HAVE ENTERED AN ADJUDICATION OR DECREE NISI AFTER THE HEARING ON THE PETITION FOR INVOLUNTARY TERMINATION OF PARENTAL *81 RIGHTS SO AS TO PERMIT JAMES FORSE TO RAISE THOSE MATTERS ASSERTED BY HIM [IN] THE EXCEPTIONS THAT WERE FILED ON HIS BEHALF?
We need not address father's first and second issues, for his third requires that we remand.
¶ 4 The order by which the trial court terminated father's parental rights is not a decree nisi but rather a filled-in proposed final order form which had originally been part of mother's petition for termination. This order states:
Now, May 8th, 1998, upon consideration of the within Petition and of the hearing thereon, the Court being satisfied as to the truth of the facts set forth in the petition and its proper execution finds that the prayer of the petition should be granted and that all parental rights to [J.J.F. and J.R.F.] have been forfeited by their father James D. Forse and the Court so finds.
Now, therefore, it is Ordered, Adjudged and Decreed that all parental rights of J.D.F. are terminated forever and custody of [J.J.F. and J.R.F.] are hereby awarded to their mother, Karen S. Kughn who is hereby authorized to give consent to the adoption of the children to Lyle Kughn and adoption of said children may be decreed without further consent of or notice to the natural parent.
¶ 5 After father's parental rights were thus terminated, his attorney filed exceptions, upon which, so far as we can discern, no court action has been taken.[1] On the thirtieth day following issuance of the above decree, father filed a notice of appeal.
¶ 6 The statute under which the court terminated father's parental rights is the Adoption Act, section 2511. 23 Pa.C.S. § 2511(a)(1), (b). In such matters, the general equity and Orphans' Court procedural rules still govern, unless there is a local procedure to the contrary.[2]In re Involuntary Termination of Parental Rights to B.M.D., 487 Pa. 387, 409 A.2d 404 (1979); In re A.L., 719 A.2d 363 (Pa.Super.1998) (en banc). Although in A.L., our court disapproved of post-trial practice in involuntary termination of parental rights cases, such practice was by no means eradicated statewide. Id. at 364. Specifically, by overruling In the Interest of R.Z.T., 707 A.2d 1156 (Pa.Super.1998), the court in In re A.L. held only that the rules applicable to such matters elsewhere do not apply in Philadelphia County. In re A.L., supra, at 364. "While our ruling does not apply to termination and adoption matters in any other judicial district of Pennsylvania, we call upon the Orphans' Court Rules Committee to consider mandating the elimination of any form of post-trial practice that delays final determination of these issues, and to provide for a uniform process throughout the state." Id. There has been no subsequent change in the applicable rules, so far as we can discern. Thus, we may not ignore their continuing mandate, as cited and discussed in R.Z.T., supra. Although that case has now specifically been overruled as to Philadelphia County, R.Z.T. remains a succinct guide to non-Philadelphia post-trial procedural requirements in termination cases, as they still stand today throughout the Commonwealth.
*82 ¶ 7 In the Interest of R.Z.T. and the many cases cited therein make it abundantly clear that in equity matters such as involuntary termination of parental rights, Pennsylvania Rule of Civil Procedure 1517 requires the trial court to enter of record a statement of the issues, findings of fact, discussion of the issue(s) of law, its conclusion, and a decree nisi. Pa.R.C.P. 1517. This, in turn, allows a party to file a motion for post-trial relief within ten days. Pa.R.C.P. 227.1. The purpose for the procedure is straightforward: it "allows the court an opportunity to correct any errors that it may have made prior to the entry of the final decree." Id., quoting In re Adoption of C.R.V., 408 Pa.Super. 386, 596 A.2d 1141, 1142 (1991). Moreover, it has the effect of supplementing the record on appealan effect we would have found helpful in our review of the case before us, where an appellate brief has been filed by neither mother nor the child advocate. Id.
¶ 8 In light of the foregoing law, it is not clear what sort of an order is before us. We are faced with a choice of treating the court's decree in the case at hand either as a non-appealable and interlocutory decree nisi upon which there are outstanding post-trial motions (styled as exceptions[3]), requiring a remand; or as an improper final decree, also requiring a remand. There is no need to decide which it is, however, for in either instance, the aim of the procedure as stated supra has been thwarted. Father has been denied his opportunity to have the trial court first address and correct any errors before entering a final decree. R.Z.T., supra; In re Adoption of Hamilton, 362 Pa.Super. 249, 523 A.2d 1176 (1987).
¶ 9 Therefore, we vacate the order involuntarily terminating father's rights and remand the record for proceedings in accordance with Rules 1517 and 227.1.[4] Upon remand, in its decree nisi, we additionally require the trial court to enter a finding, based solely on the evidence that has already been presented, on how terminating father's parental rights will affect the boys, as required by section 2511(b) of the Adoption Act.[5]
¶ 10 Order vacated. Case remanded for proceedings consistent with this opinion. Panel jurisdiction retained. All parties to file amended briefs to this court within 30 days of entry of the final decree.
¶ 11 SCHILLER, J. filed a Concurring Statement.
*83 SCHILLER, J., concurring:
¶ 1 I concur in the majority's conclusion that this case should be remanded to the trial court for further proceedings; however, I write separately to express my strenuous objection to and disapproval of appointed counsel's failure to fulfill her responsibilities on behalf of the children.
¶ 2 The Adoption Act requires the court to appoint counsel for the child in an involuntary termination proceeding which is being contested by one or both parents. 23 Pa.C.S. § 2313; In re M.T., R.T. and H.T., 414 Pa.Super. 372, 607 A.2d 271 (1992). "The purpose of the statutory requirement... [i]s to guarantee that the needs and welfare of the children w[ill] be advanced actively by an advocate whose loyalty [is] owed exclusively to them." In re Adoption of N.A.G. and A.B.G., 324 Pa.Super. 345, 471 A.2d 871, 874 (1984). The record in this case reveals that, while the child advocate in this case filed a report with the trial court recommending termination, she did not file a brief with this Court on appeal. Moreover, while in her report the child advocate states that, "The children are in need of a stable and secure home life," and "They are happy and comfortable in their surroundings[,]" she does not evaluate in detail whether and how the proposed termination of parental rights would serve the needs and welfare of the children. 23 Pa.C.S. § 2511(b); Matter of Adoption of C.A.W., 453 Pa.Super. 277, 683 A.2d 911 (1996), appeal denied, 548 Pa. 631, 694 A.2d 619 (1997) (termination of parental rights can be traumatic for child, and the emotional bond between the parent and child must be considered before termination). In my view, such failures are an unacceptable departure from counsel's duty to effectively advocate the interests of the children and may implicate the Rules of Professional Conduct. See In re M.T., supra (counsel appointed to represent the children abdicated legal responsibilities by, inter alia, failing to explain on the record whether the requisites for termination had been met and by failing to file an appellate brief); see also Rules of Professional Conduct 1.1. ("A lawyer shall provide competent representation to a client ....") and 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.").
¶ 3 For these reasons, I would remand to the trial court with instructions that, prior to entering an order disposing of Mother's petition for involuntary termination, the trial court direct the child advocate to file an amended report detailing the effect of the termination of Father's rights on the boys. Furthermore, following entry of the trial court's amended order and disposition of Father's exceptions, I expect appointed counsel to file an appellate brief setting forth all relevant matters affecting the children for this Court's consideration.
¶ 4 Finally, I take this opportunity to caution the Bar in general that court appointments should not be taken lightly and that appointed counsel should represent their clients with zeal and professionalism. The clients have no say in such an appointment and deserve to have the benefit of effective representation, particularly when a matter as important as a child's future relationship with a biological parent is at stake.
NOTES
[1] The exceptions raise four points, here paraphrased: 1) mother prevented father from having contact with the children; 2) Since mother refused to sign prison visitation forms, father was unable to visit with the children; 3) father took all steps available to him to arrange contact with the children but was thwarted by mother; and 4) the decree terminating his parental rights punishes father for being incarcerated, where father attempted contact with the children but mother prevented same. The exceptions were filed exactly ten days after the court's termination decree.
[2] See Pennsylvania Orphans' Court Rule 3.1. There is no evidence or even allegation of record tending to show the existence of any relevant, local Beaver County rules.
[3] As per the 1983 comment to Pa.R.C.P. 227.1, "Exceptions" are no longer to be filed, but "the relief heretofore available through... exceptions remains available through the new Motion for Post-Trial Relief."
[4] We direct the trial court to address the exceptions which father filed. However, in light of the fact that the original decree did not comply with the mandate of Rule 1517 and must be re-issued with substantial changes so that it does so comply, we do not find it appropriate to limit father to the post-trial motions/exceptions he filed to the court's inappropriate order. Since the court must change its order, father may address the new material therein by filing new post-trial motions in response to the court's new decree nisi on remand.
[5] Full compliance therewith requires the following:

To satisfy section 2511, the moving party must demonstrate by clear and convincing evidence that conduct existed, for at least six months prior to filing the petition, which reveals a settled intent to relinquish a parental claim to a child or a refusal or failure to perform parental duties. In re E.D.M., 550 Pa. 595, 708 A.2d 88 (1998). The clear and convincing standard will be met when testimony is "clear, direct, weighty and convincing as to enable the trier-of-fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. at 601, 708 A.2d at 91. Once the evidence establishes a failure to perform parental duties or a settled purpose to relinquish parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) the effect of termination of parental rights on the child pursuant to Section 2511(b). Id. at 602, 708 A.2d at 92 (citing In re Adoption of Atencio, 539 Pa. 161, 650 A.2d 1064 (1994)).
In re Adoption of Godzak, 719 A.2d 365, 367 (Pa.Super.1998).